NOTICE
Decision filed 07/01/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240094

NO. 5-24-0094

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| PATRICK J. O'MALLEY JR., as Trustee Under Trust Agreement Dated January 1, 2006, | ) ) ) | Appeal from the Circuit Court of Crawford County. |
| Plaintiff and Counterdefendant-Appellant, | ) ) | |
| v. | ) ) | No. 16-CH-9 |
| MARCIA P. ADAMS, as Successor Trustee of the Almyra M. Prather Revocable Trust Agreement Dated December 15, 1967, and Individually, and LAWRENCE P. LUBY, Executor of the Estate of Betty P. Luby, Deceased, | ) ) ) ) ) ) | |
| Defendants and Counterplaintiffs-Appellees. | ) ) ) | Honorable Sonja L. Ligon, Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Welch and McHaney concurred in the judgment and opinion.

**OPINION**

¶ 1 The plaintiff and counterdefendant, Patrick J. O'Malley Jr., as Trustee Under Trust Agreement Dated January 1, 2006 (the O'Malley Trust), appeals from the trial court's order denying the O'Malley Trust's motion to dissolve two orders granting injunctive relief. For the reasons that follow, we reverse the trial court's order denying the motion to dissolve the injunctions, dissolve the orders granting injunctive relief, and remand the case for further proceedings.

1

I. BACKGROUND

¶ 3     This case began in March 2016, and it is now in its ninth year of litigation. This is the third time that one or more of the parties have been before this court in regard to the case. An overview of the factual background and procedural history of the case has been set out in our prior decisions. See *O'Malley v. Adams*, 2023 IL App (5th) 220206; *O'Malley v. Adams*, 2023 IL App (5th) 210381. Accordingly, we provide only the facts and the procedural history necessary to address the issues raised in this appeal.

¶ 4     On March 18, 2016, the O'Malley Trust filed a complaint for adverse possession against the defendants, Marcia P. Adams, individually and as successor trustee of the Almyra M. Prather Revocable Trust Agreement, dated December 15, 1967, and Lawrence P. Luby, executor of the estate of Betty P. Luby, deceased (collectively, the Prather Trust). At that time, the O'Malley Trust held title to the surface rights of farmland located in Crawford County, Illinois (the Farm), and the O'Malley Trust and the Prather Trust each held a 50% interest in the underlying mineral estate.[1] In the complaint, the O'Malley Trust claimed it had acquired the Prather Trust's interest in the mineral estate by adverse possession.

¶ 5     On March 20, 2016, the Prather Trust filed an answer and affirmative defenses to the complaint, and it eventually obtained a summary judgment in its favor on the adverse possession claim. The Prather Trust also filed a counterclaim against the O'Malley Trust and third-party claims against other defendants. The Prather Trust alleged that beginning in 2008, its cotenant, the O'Malley Trust, contracted with third-party defendant Putnam Energy, LLC, to remove and sell oil and natural gas from the mineral estate, including the Prather Trust's share of those minerals,

---

[1]"Mineral estate" is a generic term used herein to describe the oil, gas, and other minerals available for extraction from the land.

without the knowledge or consent of the Prather Trust. The Prather Trust also alleged that another third-party defendant, Chicago Title Insurance Company, conspired to slander title to and convert the Prather Trust's interest in the mineral estate by issuing a title policy that falsely declared that the O'Malley Trust had merchantable title to 100% of the minerals in the mineral estate underlying the Farm. In terms of relief, the Prather Trust sought an accounting and damages against the O'Malley Trust and damages against the third-party defendants.

¶ 6    By way of background, the O'Malley Trust was established in January 2006. Under the terms of the 2006 trust agreement, Patrick J. O'Malley, individually, was the sole beneficiary of any income, earnings, and proceeds related to the surface rights of the Farm, and the Patrick O'Malley Savings Plan (Savings Plan) was the sole beneficiary of any income, earnings, and proceeds derived from the O'Malley Trust's 50% interest in the mineral estate underlying the Farm.

¶ 7    On March 19, 2019, the O'Malley Trust was amended.[2] Under the terms of the amended agreement, Mary Judith O'Malley, spouse of Patrick J. O'Malley, became the sole beneficiary of any income, earnings, and proceeds related to the surface rights of the Farm. The Savings Plan remained the sole beneficiary of any income, earnings, and proceeds derived from the O'Malley Trust's 50% share of the mineral estate underlying the Farm.

¶ 8    On April 29, 2022, the O'Malley Trust transferred the surface rights of the Farm to Jenna Bree, LLC, through a trustee's deed. The trustee's deed was recorded in Crawford County on May 6, 2022. At the time of the real estate transaction, the O'Malley Trust and Jenna Bree, LLC, agreed that the sales agreement and purchase price would be kept confidential.

---

[2]The 2006 trust agreement was amended while this litigation was proceeding. Based upon the record, there appear to be disputes regarding when the parties learned of the amended trust agreement and whether or when the amended agreement was produced in discovery.

¶ 9    On May 19, 2022, the Prather Trust filed a motion regarding the proceeds of the sale of the Farm's surface rights. The Prather Trust argued that the sale of the surface rights occurred while the litigation was pending, that it expected to receive a money judgment in its litigation against the O'Malley Trust, and that funds from the sale of the surface rights to the Farm (surface proceeds) could be used to satisfy that judgment. The Prather Trust further argued that the transfer of the surface proceeds from the O'Malley Trust to another person or entity while the litigation was pending would constitute a fraudulent transfer. The Prather Trust sought an order directing the Trustee of the O'Malley Trust to hold the surface proceeds in a separate account until the O'Malley Trust provided information about the purchase agreement and the terms of the sale.

¶ 10    On June 1, 2022, the O'Malley Trust and the Savings Plan (collectively, the O'Malley Parties) filed a response in opposition to the Prather Trust's motion. The O'Malley Parties argued that the surface proceeds arose from the sale of land in which the Prather Trust had no right or interest and that those funds belonged to Mary Judith O'Malley, a nonparty to the litigation. The O'Malley Parties further argued that the Prather Trust failed to cite any authority to support its allegation that the transfer of the surface proceeds to the designated beneficiary would constitute a "fraudulent transaction." The O'Malley Parties also questioned the trial court's authority to order them to place the surface proceeds into a separate account indefinitely and for the potential future benefit of the Prather Trust. In a separate motion, the O'Malley Parties asked the trial court to quash the Prather Trust's subpoena for the confidential sales documents, including the purchase agreement. In the alternative, the O'Malley Parties asked for an *in camera* review of those documents and a protective order.

¶ 11    In reply, the Prather Trust argued that it had a "claim" against the O'Malley Parties within the meaning of section 2(c) of the Uniform Fraudulent Transfer Act (Act) (740 ILCS 160/2(c)

4

(West 2022)) and, therefore, had an interest in any asset of the O'Malley Trust from which that claim could be satisfied. The Prather Trust reiterated its request for an order directing that the surface proceeds be held in an account until the O'Malley Parties provided additional information about the real estate transaction between the O'Malley Trust and Jenna Bree LLC.

¶ 12    On August 9, 2022, the trial court heard arguments on the Prather Trust's motion regarding the surface proceeds and the O'Malley Parties' motion to quash. There is no transcript or bystander's report from that hearing in the record on appeal. On August 10, 2022, the court entered written rulings on the pending motions. The court found that the Prather Trust had a "claim" against the O'Malley Trust within the meaning of section 2(c) of the Act. The court ordered the Trustee of the O'Malley Trust to open an account, to deposit and hold all of the surface proceeds in that account until further order, and to certify in writing, within 14 days of the order, that the surface proceeds had been deposited into that account. The court denied the O'Malley Parties' motion to quash and ordered the O'Malley Parties to provide the court and the parties with a complete copy of the confidential purchase agreement, subject to an order of protection.

¶ 13    Pursuant to the trial court's order, the O'Malley Parties produced documents related to the real estate transaction and revealed that Jenna Bree LLC paid $2,685,000 for the surface of the Farm. One of the documents produced was entitled "Preferential Right to Purchase and Right of First Refusal." The preferential rights agreement was entered on May 6, 2022, by and between Patrick J. O'Malley Jr., Trustee of the O'Malley Trust, on behalf of the Savings Plan (grantor), and Jenna Aldrich, as Manager of Jenna Bree LLC (grantee). Under the terms of the agreement, the Trustee, acting on behalf of the Savings Plan, granted to Jenna Bree LLC, both a preferential right to purchase its 50% interest in the mineral estate underlying the Farm, should the O'Malley

5

Trust decide to sell its interest, and a right of first refusal should a third-party make an offer to purchase its interest.

¶ 14    On September 9, 2022, the Prather Trust filed a motion for miscellaneous relief. The Prather Trust claimed that, beginning in 2008 and for years thereafter, all of the income and proceeds derived from the extraction and sale of minerals underlying the Farm, including income and proceeds from the sale of minerals belonging to the Prather Trust, was paid to the Savings Plan. The Prather Trust asked the trial court to sequester the funds in the Savings Plan account and stay the operation of the preferential rights agreement during the pendency of the case.

¶ 15    In response, the O'Malley Parties argued that the preferential rights agreement merely granted Jenna Bree LLC the preferential right to purchase or to refuse to purchase the O'Malley Trust's 50% interest in the mineral estate. They advised the court that the grantor and grantee had agreed that the O'Malley Trust would not sell its mineral interest while the litigation was pending. The O'Malley Parties stated they had no objection to a stay of the preferential rights agreement until the conclusion of the litigation. They did, however, object to an order sequestering the funds in the Savings Plan account.

¶ 16    On October 5, 2022, the trial court heard arguments on the Prather Trust's motion for miscellaneous relief. Again, there is no transcript or bystander's report from that hearing in the record on appeal. On October 14, 2022, the court issued a written order granting the Prather Trust's motion. The court found that the Prather Trust had a "claim" against the O'Malley Trust within the meaning of section 2(c) of the Fraudulent Transfer Act. The court further found that "beginning in 2008 and for years thereafter, all income and proceeds from the sale of the minerals underlying the [Farm], including income and proceeds from the sale of minerals belonging to [the Prather Trust], were paid to the Patrick J. O'Malley Savings Plan." The court ordered the Trustee of the

6

O'Malley Trust to hold all monies deposited in the Saving Plan, with the exception of mandatory administration fees, and to provide copies of the Saving Plan account statements to the court. The court also ordered that the O'Malley Trust's 50% interest in the mineral estate underlying the Farm "shall not be transferred or otherwise encumbered" during the pendency of the litigation or until further order of the court. The court stayed the operation of the preferential rights agreement, specifically noting that the O'Malley Parties had no objection to a stay.

¶ 17    On March 29, 2023, pursuant to the Prather Trust's supplemental motion for miscellaneous relief, the trial court ordered the Savings Plan to produce copies of its account statements from 2008 to the present. In partial compliance with that order, the Savings Plan produced statements from December 2015, through February 2023, noting that this was as far back as "the bank kept those records."

¶ 18    On May 3, 2023, the Prather Trust filed a second supplemental motion for miscellaneous relief. Therein, the Prather Trust indicated that a review of the Saving Plan account statements revealed that the Savings Plan transferred $317,719.71 to "Patrick J. O'Malley, Escrowee" on July 26, 2017, and $34,950.12 to "Patrick J. O'Malley, Escrowee" on October 5, 2017. Copies of the checks, reflecting those transactions, were appended to the motion as supporting exhibits. The memo line on each check contained a notation, "UBS Reconciliation." The Prather Trust sought an order directing that all funds transferred to Patrick J. O'Malley, Escrowee, on July 26, 2017, and October 5, 2017, and all other funds transferred from the Savings Plan account during the period from 2008 through the present, except attorney fees and administrative fees, be immediately returned to the Savings Plan account and held in accordance with the order entered October 14, 2022. Additionally, the Prather Trust sought an order directing the Savings Plan to produce all

7

account statements from 2008 through November 15, 2015, and to provide proof that said funds had been returned to the Saving Plan account.

¶ 19    On June 7, 2023, the O'Malley Trust filed a "Motion to Dissolve Injunctions And Vacate Orders Of Attachment Entered On August 10, 2022 and October 14, 2022." Initially, the O'Malley Trust claimed that the order of August 10, 2022, constituted an improper prejudgment attachment and improperly "enjoined" the distribution of the surface proceeds to Mary Judith O'Malley. In support, the O'Malley Trust argued that the surface rights to the Farm and the rights to the underlying mineral estate were separate assets, that the Prather Trust had no legal or equitable interest in the surface rights, and that any funds derived from the use or sale of the surface rights belonged to Mary Judith O'Malley. Next, the O'Malley Trust claimed that the order of October 14, 2022, constituted an improper order of attachment and wrongly prohibited the transfer of funds out of the Savings Plan account, even though those funds were retirement funds and therefore statutorily exempt from attachment under section 12-1006(a) of the Code of Civil Procedure (735 ILCS 5/12-1006(a) (West 2022)). In support, the O'Malley Trust argued the Savings Plan was the sole beneficiary of the royalties derived from the sale of minerals extracted from the mineral estate, that the sum of the mineral royalties paid to the Savings Plan between 2008 and 2017 totaled $280,687, and that this sum represented a fraction of the net value of the Savings Plan. The O'Malley Trust concluded that the Prather Trust presented no evidence or arguments in support of its request for preliminary injunctive relief and that the trial court granted injunctive relief without identifying the facts and the legal basis for that relief.

¶ 20    In a supporting affidavit, Patrick J. O'Malley averred that he was the administrator of the Savings Plan, that the Savings Plan was a defined contribution retirement plan, and that most of the assets in the Savings Plan were contributed from his law firm. He expressed his belief, based

8

on an accounting performed by his brother, that between 2008 and 2017, the royalties paid to the Savings Plan from leasing the mineral estate underlying the Farm totaled $280,687.31, that no other proceeds from the mineral estate had been paid into the Savings Plan since 2017, and that the net asset value of the Savings Plan was "significantly more" than $280,687.31.

¶ 21 The O'Malley Trust also filed a response to the Prather Trust's second supplemental motion for miscellaneous relief. The O'Malley Trust argued that the motion should be denied for the reasons stated in its motion to dissolve the injunctions.

¶ 22 The Prather Trust filed a response in opposition to the O'Malley Trust's motion to dissolve the injunctions. The Prather Trust argued that the O'Malley Trust mischaracterized the trial court's orders as prejudgment attachments. It claimed that, pursuant to section 8(a)(3)(C) of the Act (740 ILCS 160/8(a)(3)(C) (West 2022)), the trial court had the authority to sequester the surface proceeds and the funds in the Savings Plan account as a form of "other relief" to preserve the status quo.

¶ 23 In reply, the O'Malley Trust argued that the Prather Trust could not invoke section 8 of the Act because it had not filed a cause of action or count for relief under the statue. The O'Malley Trust reasserted its arguments that the surface proceeds could not be attached as a matter of law because those proceeds belonged to Mary Judith O'Malley, who was not a party to the proceedings, and that the funds in the Savings Plan were exempt from attachment. It also claimed the October 14, 2022, order was improper because it sequestered all of the funds in the Savings Plan and was not limited to funds derived from the mineral estate.

¶ 24 The trial court heard arguments from the parties on August 8, 2023, and December 5, 2023. On December 21, 2023, the court denied the O'Malley Trust's motion to dissolve the injunctions and vacate the orders entered August 10, 2022, and October 14, 2022. The court also granted the

9

Prather Trust leave to amend its counterclaim and third-party complaint to add counts alleging fraudulent transfer.[3] On January 16, 2024, the O'Malley Trust appealed the order of December 21, 2023, denying its motion to dissolve the injunctions.

¶ 25                                        II. ANALYSIS

¶ 26    At the outset, we will consider whether we have jurisdiction to hear this appeal. The Prather Trust argues that we lack jurisdiction because the underlying orders entered August 10, 2022, and October 14, 2022, are not injunctive orders, and therefore, the order denying the O'Malley Trust's motion to dissolve and vacate those underlying orders is not appealable under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017).

¶ 27    Rule 307(a)(1) provides that an appeal may be taken from an interlocutory order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017). To determine whether a trial court's order constitutes an injunctive order for purposes of Rule 307(a)(1), the reviewing court looks to the substance of the order, rather than its form. *In re A Minor*, 127 Ill. 2d 247, 260 (1989). Actions of the trial court that have the force and effect of injunctions are appealable under Rule 307(a)(1), even if called something else. *In re A Minor*, 127 Ill. 2d at 260. An injunctive order requires a party to do a particular thing or to refrain from doing a particular thing, the most common sort of which operates as a restraint upon the party in the exercise of his real or supposed rights. *In re A Minor*, 127 Ill. 2d at 261. That said, not every nonfinal order is appealable, even if it compels a party to do or not do a particular thing. *In re A Minor*, 127 Ill. 2d at 261-62. Ministerial and administrative orders that regulate only the procedural aspects of the litigation are not considered to be injunctive rulings and are not

---

[3]On January 12, 2024, the Prather Trust filed its sixth amended counterclaim and third-party complaint and added a count against the Savings Plan and Patrick J. O'Malley Jr., individually, alleging violations of the Fraudulent Transfer Act (count X).

10

appealable under Rule 307(a)(1). *In re A Minor*, 127 Ill. 2d at 262. Such orders do not affect the relationship of the parties in their everyday activity apart from the litigation and are therefore distinguishable from traditional forms of injunctive relief. *In re A Minor*, 127 Ill. 2d at 262.

¶ 28    After reviewing the substance of the orders entered on August 10, 2022, and October 14, 2022, we conclude that they are injunctive in nature. The orders direct the O'Malley Parties to sequester both the surface proceeds and all funds in the Savings Plan until the Prather Trust's claims are resolved or until further order of the court. The effect of these orders is to restrict the transfer of the surface proceeds to the sole beneficiary, who is not a party to the litigation, and to deprive the Savings Plan of access to funds that are unrelated to the sale of minerals extracted from the mineral estate. Consequently, we conclude that the order of December 21, 2023, denying the motion to dissolve those injunctive orders, is appealable under Rule 307(a)(1). Accordingly, we have jurisdiction over this appeal.

¶ 29    In this appeal, the O'Malley Trust claims that the trial court erred in denying its motion to dissolve the injunctions, and it raises several arguments in support of that claim. The decision to deny a motion to dissolve a preliminary injunction is reviewed for an abuse of discretion. *McHenry County Sheriff v. McHenry County Department of Health*, 2020 IL App (2d) 200339, ¶ 22. When reviewing a trial court's ruling on a motion to dissolve a preliminary injunction, substantive issues are to be considered only as necessary to resolve whether the trial court abused its discretion. *McHenry County Sheriff*, 2020 IL App (2d) 200339, ¶ 22. Arguments concerning the issuance of an injunctive order that are unnecessary to resolving the question of whether the court abused its discretion in denying a motion to dissolve the injunctive order are irrelevant. *McHenry County Sheriff*, 2020 IL App (2d) 200339, ¶ 22. Conversely, arguments concerning the issuance of the injunctive order that are necessary to resolving the question of the court's exercise of discretion in

11

ruling on the motion to dissolve are relevant. *McHenry County Sheriff*, 2020 IL App (2d) 200339, ¶ 22. The standard governing the trial court's judgment on a motion to dissolve the injunctive order is whether the party in whose favor the order was issued has demonstrated a fair question as to the existence of its rights. *McHenry County Sheriff*, 2020 IL App (2d) 200339, ¶ 23. For purposes of our review under Rule 307(a)(1), the O'Malley Trust's argument pertaining to whether the trial court erred in granting preliminary injunctive relief is both relevant and dispositive. As to that issue, the O'Malley Trust claims that the trial court erred when it entered injunctive orders that effectively froze access to and use of the surface proceeds and the funds in the Savings Plan account indefinitely, without conducting an evidentiary hearing and without making any findings as to the required elements for injunctive relief. In response, the Prather Trust claims that the challenged orders were properly entered as "other relief" under section 8 of the Fraudulent Transfer Act (740 ILCS 160/8 (West 2022)).

¶ 30     A preliminary injunction is an extraordinary provisional remedy that is granted to preserve the status quo until the case can be decided on the merits. *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co.*, 195 Ill. 2d 356, 365 (2001). Its purpose is not to determine controverted rights, controverted facts, or the merits of a case. *Buzz Barton & Associates, Inc. v. Giannone*, 108 Ill. 2d 373, 386 (1985). To establish entitlement to preliminary injunctive relief, the party seeking the injunction must demonstrate (1) a clearly ascertainable right in need of protection, (2) irreparable harm to that right without the injunction, (3) the lack of an adequate remedy at law, and (4) a substantial likelihood of success on the merits. *Callis*, 195 Ill. 2d at 365-66. On appeal, a reviewing court considers whether the party seeking a preliminary injunction has made a *prima facie* showing that there is a fair question concerning the existence of the rights claimed. *Callis*, 195 Ill. 2d at 366. The decision to grant or deny a preliminary injunction rests

12

within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Callis*, 195 Ill. 2d at 366. The question before the reviewing court is whether there was a sufficient showing to sustain the trial court's order. *Callis*, 195 Ill. 2d at 366.

¶ 31 The Act was enacted to enable a creditor to defeat a debtor's transfer of assets to which the creditor was entitled. See 740 ILCS 160/5, 6 (West 2022); *Northwestern Memorial Hospital v. Sharif*, 2014 IL App (1st) 133008, ¶ 16. In Illinois, the Act recognizes two categories of fraudulent transfers: fraud in fact and fraud in law. *Sharif*, 2014 IL App (1st) 133008, ¶ 18; *Apollo Real Estate Investment Fund, IV, L.P. v. Gelber*, 403 Ill. App. 3d 179, 193 (2010). To prevail on a claim based upon fraud in fact, a party must show that a transfer was made with an actual intent to hinder, delay, or defraud the creditors. *Apollo Real Estate Investment Fund, IV, L.P.*, 403 Ill. App. 3d at 193. To prevail on a claim based upon fraud in law, a party must show that a transfer was made for inadequate consideration and that the debtor retained insufficient assets to meet its obligation. *Sharif*, 2014 IL App (1st) 133008, ¶ 18. Where a transfer is made for inadequate consideration, the fraud is presumed and the intent of the parties to the transaction is immaterial. *Sharif*, 2014 IL App (1st) 130008, ¶ 18. Section 8 of the Act identifies the types of relief that may be obtained by a creditor. 740 ILCS 160/8 (West 2022). Subsection (a)(3)(A) provides in pertinent part that a creditor may obtain, "subject to applicable principles of equity and in accordance with applicable rules of civil procedure," "an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property." 740 ILCS 160/8(a)(3)(A) (West 2022).

¶ 32 In its motion and supplemental motions for relief, the Prather Trust asserted that it had a claim for fraudulent transfer within the meaning of the Act, and it requested an order sequestering funds under section 8(a)(3)(A) of the Act (740 ILCS 160/8(a)(3)(A) (West 2020)). At the time these motions were filed, the Prather Trust's counterclaim and third-party complaint did not

13

include a count alleging a cause of action under the Act. In opposing the Prather Trust's motions, the O'Malley Trust disputed the Prather Trust's right to any relief under the Act. Contrary to the Prather Trust's assertions, the relief it requested was injunctive in nature. Thus, the trial court was required to determine whether the Prather Trust showed that it had a clearly defined right that required protection, that there would be an immediate and irreparable harm if an injunction was denied, that there was no adequate remedy at law, and that there was a probability of ultimate success on the merits. Here, however, there was no evidentiary hearing, and there is no report of proceedings or bystander's report recounting the arguments made to the trial court during the hearings on the Prather Trust's motions. The trial court entered the orders of August 10, 2022, and October 14, 2022, granting injunctive relief, without making the necessary findings after an evidentiary hearing. Based on the record before us, we cannot find that the Prather Trust demonstrated that there is a fair question as to the existence of its asserted rights.

¶ 33                                        III. CONCLUSION

¶ 34    After reviewing the record, we find that the trial court abused its discretion in denying the O'Malley Trust's motion to dissolve the injunctive orders, where those orders were entered without the required procedural safeguards. Consequently, the trial court's order of December 21, 2023, denying the O'Malley Trust's motion to dissolve the injunctions, is reversed, and the injunctive relief (*i.e.*, the orders restricting the use and transfer of the surface funds and the funds in the Savings Plan account, issued within the orders of August 10, 2022, and October 14, 2022) are hereby vacated. The cause is remanded for further proceedings. In remanding the case, we are mindful that this case had been pending for more than eight years and that the parties' claims and defenses are well known, and we find it necessary to admonish the parties that the trial court would be within its authority to reject any further delay in bringing this case to trial, without just cause.

14

¶ 35    Reversed in part and vacated in part; cause remanded.

*O'Malley v. Adams*, 2024 IL App (5th) 240094

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Crawford County, No. 16-CH-9; the Hon. Sonja L. Ligon, Judge, presiding. |
| **Attorneys for Appellant:** | Robert D. Carroll and Richard A. Saldinger, of Landsman Saldinger Carroll, PLLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | A. Courtney Cox and Benjamin R. Wesselschmidt, of Sandberg Phoenix & von Gontard P.C., of Edwardsville, for appellees. |